In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3270

Estate of Shannon Novack, deceased,
by its personal representative, Susan Turbin,
and Susan Turbin,

Plaintiffs-Appellants,

v.

County of Wood, a municipal corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 98-C-0850-S--John C. Shabaz, Chief Judge.

Argued March 27, 2000--Decided August 7, 2000

        Before Flaum, Chief Judge, Posner and Williams,
Circuit Judges.

        Flaum, Chief Judge. The estate of Shannon Novack
and Susan Turbin brought suit against the County
of Wood (the "County") under 42 U.S.C. sec. 1983,
alleging that the County deprived Novack of his
Eighth Amendment rights when it failed to prevent
his suicide during his incarceration in the Wood
County Jail ("WCJ"). The district court granted
summary judgment in favor of the defendant. For
the reasons stated herein, we affirm.

I. BACKGROUND

        On December 22, 1997, Shannon Novack was
diagnosed by Dr. Edward Root as a paranoid
schizophrenic who tended to be impulsive and who
was a possible suicide risk. Dr. Root prescribed
medication to address Novack's condition. On
December 29, 1997, while he was with his mother
Susan Turbin and grandmother Gladys Jaehn, Novack
became agitated and threatened to kill himself.
Turbin convinced Novack to voluntarily commit
himself at the Norwood Mental Health Center
("Norwood"). However, when Turbin and Novack
arrived at Norwood, Novack changed his mind about
being committed and left the facility.

A short time later, Novack was arrested by an officer from the Marshfield Police Department on outstanding warrants and taken to the Marshfield police station. Shortly thereafter, Wood County Deputy Sheriff Rick Kirst transported Novack from the police station to the Wood County Jail. Deputy Kirst talked with Turbin and Kenneth Wahlstrand, an employee at Norwood, regarding Novack's condition. Deputy Kirst told Turbin and Wahlstrand that he would notify WCJ staff of Novack's potential for suicide and that jail personnel would watch him closely. When Deputy Kirst met with Deputy Raymond Starks to transfer Novack to WCJ, he informed Starks that Novack was a suicide risk and should be watched closely. Neither Kirst nor Starks thought that Novack behaved in an unusual manner during their contact with him.

Novack was booked into WCJ by Officer Denise Ellis, who conducted a medical screening of Novack as part of standard WCJ procedure. The medical screening is intended to identify physical or mental problems that an inmate may possess. In his responses to the medical screening questions, Novack indicated that he had seen mental health professionals in the past, including a visit to Dr. Root earlier in the week, but stated that he was not considering suicide and had never attempted suicide. Deputy Starks then informed Officer Ellis that Novack was a suicide risk and that WCJ staff should watch him accordingly. Deputy Starks also told Officer Ellis that Novack had been at Norwood earlier in the day but had not been admitted. Officer Ellis concluded that Novack had a possible mental illness based on the information provided by Deputy Starks and the medical screening.

Officer Ellis decided to place Novack in an observation cell which is normally used for inmates on suicide watch. The WCJ officer on duty the following day was not informed of the reasons for Novack's placement in the observation cell. Novack remained in the observation cell until about 2:00 p.m. the next day when he was taken to court and it was determined that he would remain in custody because of a probation violation. Upon his return from court, Novack was placed in a two-person cell in the general jail population. Officer King, the supervisor on duty at the time, does not know who made the decision to place Novack in the general population instead of in the observation cell or why that decision was made.

The following day, December 31, 1997, Dr. Root telephoned WCJ to prescribe new medication for Novack. WCJ personnel filled the prescription and

administered the medication to Novack during the remainder of his stay at WCJ.

During the following two weeks, Annalee Miller, an inmate housed in the cell next to Novack's, heard Novack pounding on the cell walls on a daily basis and periodically giggling uncontrollably. Miller reported Novack's behavior to WCJ officers and expressed concern that Novack might be in need of mental health care. Novack's cell-mate Lewis England also saw Novack regularly pounding on the cell walls and thought he was in need of mental health care. However, WCJ personnel did not observe any unusual behavior by Novack during his stay at WCJ.

At 10:00 p.m. on January 17, 1998, WCJ officers entered Novack's cell to give him his prescribed medication. At 12:05 a.m. on January 18, jail personnel returned to Novack's cell and discovered that Novack had hung himself using a bed sheet. Susan Turbin, Novack's mother, brought suit on behalf of Novack's estate and on her own behalf against Wood County alleging that the County had deprived her son of his Eighth Amendment rights by having inadequate policies and practices for treating mentally ill inmates and by failing to adequately train WCJ personnel to provide necessary mental health care to her son that would have prevented his suicide. The district court granted summary judgment in favor of the County, and the plaintiffs now appeal.

## II.  DISCUSSION

We review the district court's grant of summary judgment in favor of the County de novo. See Johnson v. University of Wisc. Eau-Claire, 70 F.3d 469, 477 (7th Cir. 1995). We look at all evidence in the light most favorable to the plaintiffs and draw all reasonable inferences in their favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Prison inmates have an Eighth Amendment right to be confined under conditions that provide "adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In addition, prison officials are responsible for taking reasonable steps to guarantee the safety of the inmates in their charge. Id. To make out a claim for a violation of an inmate's Eighth Amendment right to adequate conditions of confinement, a plaintiff must make two showings: "First, the danger to the inmate must be objectively serious, posing a substantial risk of serious harm. Second, the prison official must have a sufficiently culpable state of mind-- one of 'deliberate indifference' to inmate health or safety." Haley v. Gross, 86 F.3d 630, 640-41

(7th Cir. 1996); see Farmer, 511 U.S. at 834.

"Deliberate indifference," as it is used in the Eighth Amendment context, comprehends more than mere negligence but less than the purposeful or knowing infliction of harm. See Farmer, 511 U.S. at 836; Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haley, 86 F.3d at 641. Deliberate indifference requires that a prison official know of and disregard a substantial risk of serious harm to inmate health or safety. See Farmer, 511 U.S. at 837. The deliberate indifference standard is a subjective one. It is not enough that there was a danger of which a prison official objectively should have been aware. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Shannon Novack committed suicide while incarcerated in the Wood County Jail. The plaintiffs argue that Novack's suicide was the result of WCJ policies and practices that reflected the County's deliberate indifference to the medical needs of mentally ill inmates. Suicide is a "serious harm" and prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life. See Estate of Cole v. Fromm, 94 F.3d 254, 259 (7th Cir. 1996) (holding that defendant prison officials "may be liable for [an inmate's] suicide if they were deliberately indifferent to a substantial suicide risk"); see also Collignon v. Milwaukee County, 163 F.3d 982, 990 (7th Cir. 1998); Payne v. Churchich, 161 F.3d 1030, 1041 (7th Cir. 1998). Mere knowledge that an inmate is behaving violently or "acting in a 'freaky' manner" is not sufficient to impute awareness of a substantial risk of suicide. State Bank of St. Charles v. Camic, 712 F.2d 1140, 1146 (7th Cir. 1983); see also Mathis v. Fairman, 120 F.3d 88, 91 (7th Cir. 1997). In order to be liable under the Eighth Amendment, a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing this act. See Collignon, 163 F.3d at 990 (holding that even placing an inmate on suicide watch may not demonstrate a subjective awareness of a substantial risk of imminent suicide); Camic, 712 F.3d at 1146 (holding that officers took reasonable measures to prevent an inmate's suicide where they were unaware that the inmate was a high suicide risk but removed the prisoner's belt and shoe laces in order to guard against suicide attempts).

In this case, when Shannon Novack was first brought to the WCJ, jail officials were informed that he had been at a mental health facility earlier in the day and that he was a potential risk for suicide. Novack was then questioned concerning his mental health, and he responded that he was not contemplating suicide and had never attempted suicide. In addition, neither the sheriff's deputies who transported Novack to WCJ nor the jail personnel who initially admitted him were aware of any suicidal behavior exhibited by Novack. Nevertheless, Novack was placed in an observation cell until he was taken to court the next day. Novack did not exhibit any suicidal behavior during this time. When Novack's psychiatrist Dr. Root contacted the jail the next day, he prescribed medication for Novack but did not inform WCJ that Novack was a suicide risk. Other inmates apparently informed jail personnel that Novack was behaving strangely by pounding on the walls of his cell and giggling. However, strange behavior alone, without indications that that behavior has a substantial likelihood of taking a suicidal turn, is not sufficient to impute subjective knowledge of a high suicide risk to jail personnel. See Mathis, 120 F.3d at 91; Camic, 712 F.2d at 1146. Novack did not take his life until more than two weeks after he was incarcerated at WCJ. While he may have exhibited some bizarre behavior during that time, he evidenced no behavior that put jail officials on notice that there was a significant likelihood that he would attempt to harm himself. We cannot conclude on this record that WCJ personnel were subjectively aware that Novack posed a high risk of suicide and were deliberately indifferent to that risk.

The plaintiffs argue, however, that WCJ personnel would have been aware that Novack posed a substantial suicide risk had they been adequately trained to handle mentally ill inmates. Ordinarily, a prison official does not violate the Eighth Amendment when he should have been aware of a risk that harm would befall an inmate but was not actually subjectively aware of that risk. See Farmer, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). However, a municipality, rather than an individual, may violate the Eighth Amendment where a risk of serious harm was so patently obvious that the municipality must have been aware of risk of harm and, by failing to act to rectify it, sanctioned the harmful conduct. See Jackson v. Marion County, 66 F.3d 151, 152 (7th Cir. 1995); Farmer, 511 U.S. at 841 (noting that allegations that individual officers

violated Eighth Amendment rights are examined using a subjective awareness standard while allegations of municipal misconduct receive an objective analysis).

A municipality may be liable for harm to persons incarcerated under its authority "if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners." Payne, 161 F.3d at 1043. This liability is not founded on a theory of vicarious liability or respondeat superior that holds a municipality responsible for the misdeeds of its employees. See City of Canton v. Harris, 489 U.S. 378, 385 (1989); Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). Rather, a municipal policy or practice must be the "direct cause" or "moving force" behind the constitutional violation. See City of Oklahoma v. Tuttle, 471 U.S. 808, 820 (1985); City of Canton, 489 U.S. at 385; Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978). In other words, "it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under sec. 1983." Monell, 436 U.S. at 694. That a constitutional injury was caused by a municipality may be shown directly by demonstrating that the policy itself is unconstitutional. See id. at 694-95 (holding that a municipality may be liable under sec. 1983 for a policy that requires pregnant women to take unpaid leave before leave was required for medical reasons because the policy itself is unconstitutional). Municipal liability may also be demonstrated indirectly "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." Jackson, 66 F.3d at 152.

The plaintiffs argue that the policies in place to train WCJ personnel on the proper treatment of mentally ill inmates were so inadequate that the County was on notice at the time Shannon Novack was incarcerated that there was a substantial risk that he would be deprived of necessary medical care in violation of his Eighth Amendment rights. The plaintiffs allege that because of inadequate WCJ policies and practices concerning the treatment of mentally ill inmates, WCJ officers were unaware that Novack posed a significant suicide risk and failed to take reasonable steps to prevent him from taking his own life.

As noted above, the plaintiffs may prove their

allegation that the County was deliberately indifferent to the constitutional violations WCJ personnel were inflicting on mentally ill inmates by presenting either a series of unconstitutional acts from which it may be inferred that the County knew WCJ officers were violating the constitutional rights of WCJ inmates and did nothing or by direct evidence that the WCJ policies, practices or training methods were unconstitutional. Plaintiffs have not shown that there was a pattern of suicide at WCJ from which we can draw the inference that the County was aware that WCJ policies for treating mentally ill inmates at risk for suicide were inadequate and chose to do nothing in the face of this knowledge. Even if we were to find that Novack's suicide itself was a result of unconstitutional conduct, a single instance of allegedly unconstitutional conduct does not demonstrate a municipality's deliberate indifference to the constitutional rights of its inhabitants./1 See Tuttle, 471 U.S. at 823-24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy."); Jackson, 66 F.3d at 152. In the absence of a series of constitutional violations from which deliberate indifference can be inferred, the plaintiffs must show that the policy itself is unconstitutional.

As evidence that WCJ policies themselves were constitutionally inadequate the plaintiffs first point to several instances where the policies and practice of WCJ differ from the requirements of state statute./2 While state law violations should be of concern to Wood County and the State of Wisconsin, they do not form the basis for imposing sec. 1983 liability. See White v. Olig, 56 F.3d 817, 820 (7th Cir. 1995); Burgess v. Ryan, 996 F.2d 180, 184 (7th Cir. 1993); Martin v. Tyson, 845 F.2d 1451, 1455 (7th Cir. 1988). It is only when municipal policy fails to meet federal constitutional or statutory standards that sec. 1983 liability may be imposed. See Tuttle, 471 U.S. at 816. Section 1983 provides no remedy for failure to meet state law requirements.

Next, the plaintiffs present expert testimony from a psychiatrist who points out numerous flaws in the WCJ policies for treating mentally ill inmates and states the opinion that these deficiencies contributed to Novack's death. While the expert's opinion may demonstrate that WCJ personnel could have done more to become aware of the danger that Novack posed to himself based on the strange behavior that he was exhibiting, that opinion does not indicate that WCJ policies

caused jail personnel to be deliberately indifferent in the face of a patently obvious suicide risk. In other words, the evidence presented by the plaintiffs has not shown that but for WCJ policies, WCJ personnel would have been aware that Novack posed a high risk of suicide and would have taken reasonable steps to prevent him from taking his own life. We have found that WCJ officers in this case were not deliberately indifferent to the suicide risk posed by Novack, and we cannot conclude that the officers would have been aware of that risk had it not been for the County policies that caused their deliberate indifference./3

III.  CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment to the defendant is Affirmed.


/1 While the plaintiffs make reference in their Statement of Facts to another suicide that occurred at WCJ one month prior to Novack's incarceration, they do not argue that this incident put WCJ on notice that its policies and practices posed a substantial risk to the safety of WCJ inmates.


/2 The plaintiffs assert that WCJ policy and practice did not comport with state statutes requiring more frequent observation of mentally ill inmates than inmates in the general population, documentation of observation of inmates, maintenance of procedures for addressing non-emergency medical situations, and segregation of mentally ill inmates from non-mentally ill inmates.

/3 The dissent contends that WCJ personnel's "bad acts" of "routinely" ignoring several WCJ policies could create an inference that the County was deliberately indifferent to Novack's Eighth Amendment rights. However, the "bad acts" from which municipal liability may be indirectly inferred must be a "pattern of conduct or a series of acts violative of constitutional rights." Powe v. City of Chicago, 664 F.2d 639, 651 (7th Cir. 1981). The plaintiffs have not presented any evidence that WCJ personnel regularly ignored established WCJ policies, rather than simply failing to follow certain policies in the singular instance of their treatment of Novack. Furthermore, the failure to follow a policy calling for documenting an inmate's refusal to eat or for frequently observing an inmate who is on suicide watch is

not itself an infliction of cruel or unusual punishment that violates the Eighth Amendment. See, e.g., Estate of Cole, 94 F.3d at 261 (holding that failure to observe an inmate who was on suicide watch more frequently than once each hour did not violate the Eighth Amendment); Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir. 1996) ("In order to violate the Eighth Amendment, the condition of confinement must be a denial of 'basic human needs' or 'the minimal civilized measure of life's necessities.'") (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Because the plaintiffs have not presented evidence of a "series" of constitutional violations, or of any constitutional violations at all, there is no "bad acts" evidence from which County liability may be inferred under Monnel.

In the absence of indirect evidence, the plaintiffs are required to show that WCJ policies themselves are unconstitutional. However, WCJ policies call for jail personnel to evaluate inmates for suicide risk and take reasonable measures to protect inmates when they become aware that a risk is present. The plaintiffs do not claim at this stage that WCJ personnel were inadequately trained to carry out these policies. While we agree with the dissent that there are additional policies that could improve WCJ's treatment of its mentally ill inmates, the plaintiffs' proffered evidence does not demonstrate that WCJ's existing policies fall below the constitutional standards mandated by the Eighth Amendment. See Anderson v. Romero, 72 F.3d 518, 524 (7th Cir. 1995) ("The Eighth Amendment forbids cruel and unusual punishments; it does not require the most intelligent, progressive, humane, or efficacious prison administration.").

Williams, Circuit Judge, dissenting. I generally agree with my colleagues' legal analysis but find that genuine issues of material fact preclude summary judgment. I agree with the majority's determination that the Eighth Amendment is implicated only when prison officials are cognizant of a significant likelihood that an inmate may imminently seek to take his own life. Thus, we have not found prison officials liable for prison suicides without an allegation of suicidal tendencies, evidence of past suicide attempts, or warnings of suicidal conditions. See

Payne v. Churchich, 161 F.3d 1030, 1042 (7th Cir. 1998), cert. denied, 527 U.S. 1004 (1999). Moreover, behaving in a strange or bizarre manner is not enough to put prison officials on notice that an inmate is a substantial suicide risk. See Mathis v. Fairman, 120 F.3d 88 (7th Cir. 1997); State Bank of St. Charles v. Camic, 712 F.2d 1140 (7th Cir. 1983).

In Novack's case, however, genuine issues of material fact exist for a reasonable jury to find that prison officials were aware of a substantial risk that he may imminently commit suicide. For example, when Novack was booked into the Wood County Jail, Deputy Raymond Starks of the Wood County Sheriff's Department informed Officer Denise Ellis that Novack was a suicide risk and that the jail staff should watch him accordingly. Officer Ellis also knew that Novack had been at Norwood Mental Health Center earlier that day. Furthermore, she wrote "watch" on Novack's medical screening inventory. She was aware that Novack had been diagnosed in the past with a mental illness, and she concluded that Novack had a possible mental illness.

Novack was then placed in an observation cell that is normally used for inmates on suicide watch./1 However, there is no record that the jail officials paid close attention to Novack while he was in the observation cell. Furthermore, without consulting any mental health experts or insuring that he would be subject to suicide watch scrutiny, the officials inexplicably transferred him to the general jail population.

While in jail, Novack took psychotropic medicine prescribed by his psychiatrist. There is no record of the jail officials insuring that he took his medicine when they handed it to him. Furthermore, his jailers did not make any record of closely observing Novack to watch his reaction to this prescription medicine. During his time in general population, his mental health did not improve. He pounded on his cell walls almost every day and was subject to regular uncontrolled fits of laughing and giggling. He did not eat all of his meals, he lost weight, and his appearance was unkept. However, jail staff never conducted a full medical evaluation of Novack.

The facts at issue here are similar to those in Hall v. Ryan, 957 F.2d 402 (7th Cir. 1992), where we ruled that a jury, and not the court, must determine whether jail officials were aware of a substantial suicide risk. In Hall, we affirmed the district court's denial of defendants' summary judgment motion. We agreed that the detainee's estate raised genuine issues of

material fact whether defendants were aware that the detainee/2 was a substantial suicide risk. See id. at 405. After his arrest, the detainee became excited and belligerent. He urinated on the floor and swore at the police officers. See id. at 403. Moreover, he had threatened to commit suicide when he was arrested by the same police department nine months prior to the incident in question. See id. at 403-04. The detainee's prior arrest report states that he has attempted suicide several times. See id. at 404. Based on the detainee's behavior on the day of his arrest and his prior encounters with this police department, we found that the plaintiff had raised genuine issues of material fact whether defendants knew that the detainee was a serious suicide risk. See id. at 405./3

As in Hall, we have more than Novack's strange and bizarre behavior. We also have evidence that jail officials knew that Novack was a suicide risk and had a possible mental illness. Finally, the jail staff failed to conduct a full medical evaluation and failed to subject Novack to any suicide watch scrutiny. Consequently, from this evidence, a reasonable factfinder could conclude that there existed a substantial risk that Novack would imminently commit suicide and that jail officials knew of this risk, yet failed to act.

The majority opinion seems to discount this evidence and instead focuses on the fact that Novack told the intake officer that he was not contemplating suicide. Moreover, the majority opinion focuses on the conversation between Dr. Root, Novack's psychiatrist, and jail officials, where Root did not mention that Novack had any suicidal tendencies. These facts do not, however, allow us to draw a legal conclusion that Wood County Jail officials were not deliberately indifferent to a substantial risk that Novack would harm himself.

The County of Wood is the only remaining defendant. Local government liability cannot be based upon the theory of respondeat superior. As the majority opinion indicates, however, municipal liability can be demonstrated indirectly if a court can infer from a series of bad acts that policymakers were condoning subordinates' misconduct. See Jackson v. Marion County, 66 F.3d 151, 152 (7th Cir. 1995).

A reasonable jury could find that Wood County's customs and lack of procedures caused the deliberate indifference to Novack's Eighth Amendment rights. First, the jury could find that there was a custom of not following certain procedures as it relates to mentally ill inmates and that this custom caused Novack's suicide. For

example, evidence suggests that the following jail policies were routinely ignored: (1) referral of mentally ill inmates to medical staff; (2) segregation of mentally ill from non-mentally ill inmates; (3) suicide watch for at-risk inmates where they are checked and a log completed every 15 minutes; (4) medicine consumed in front of officers; and (5) officers determining and documenting the reason that inmates decline food. By ignoring these policies, a reasonable jury could find that the jail showed deliberate indifference toward inmates who, like Novack, already had a demonstrated risk of suicide. Consequently, a jury could properly infer from these "bad acts" that Wood County Jail condoned this conduct./4

Second, a reasonable jury could find that the lack of certain jail procedures demonstrates deliberate indifference toward suicide risk inmates. Arden Geisler, the administrator of the jail since 1978, is responsible for policies and procedures at the Wood County Jail. Wisconsin state law makes the sheriff or other jailkeeper responsible for enacting a policy and procedure manual for the operation of the jail. See Wis. Stat. sec. 302.365(1)(a). The following procedures were not in place at Wood County Jail: (1) no health appraisal is conducted by a health care professional, even when initial screening warrants it; (2) a supervisor may remove an inmate from a suicide watch without consulting with a health professional; (3) no mental health professional examines an inmate after he is put on suicide watch; and (4) suicide risk assessments are not performed, even when initial screening warrants it. By failing to implement procedures to involve health care professionals in the care taking of mentally ill inmates who are specific suicide risks, a reasonable jury could find that the Wood County Jail showed deliberate indifference toward inmates who are known suicide risks.

While the district court should review the whole record, it must draw all reasonable inferences in favor of the nonmovant and can neither weigh the evidence nor make any credibility determinations. Cf. Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000)./5 "Credibility determinations, the weighing of the evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). Consequently, we must give credence to the numerous facts that support plaintiffs' allegations that Wood County Jail officials were aware of a substantial risk that Novack may imminently commit suicide. The weighing of this

evidence is the sole province of the jury--not the district court, or this court. The district court's grant of summary judgment in favor of Wood County Jail should be reversed. Accordingly, I respectfully dissent.

/1 The majority cites Collignon v. Milwaukee County, 163 F.3d 982, 990 (7th Cir. 1998), for the proposition that placing an inmate on suicide watch may not demonstrate a subjective awareness of a substantial risk of imminent suicide. Collignon, however, concerns an inmate who killed himself after being released to the custody of his parents. The issue in Collignon was whether officials had a constitutional obligation to devise a treatment plan for the inmate, not whether they could have prevented his suicide while he was in custody.

/2 Pretrial detainees, who are protected under the Fourteenth Amendment's Due Process Clause for maltreatment while in custody, receive the same protection as inmates. See Payne, 161 F.3d at 1041.

/3 Other courts have denied summary judgment motions by defendants in similar situations. See Greason v. Kemp, 891 F.2d 829, 831-32, 835 (11th Cir. 1990) (finding that a factfinder could conclude that defendants were deliberately indifferent to decedent's needs because defendants were aware that decedent had contemplated suicide, continued to have suicidal tendencies, and was taking antidepressants); Cabrales v. County of Los Angeles, 886 F.2d 235 (9th Cir. 1989) (finding deliberate indifference because the same jailers had rescued decedent from a previous suicide attempt); Partridge v. Two Unknown Police Officers, 791 F.2d 1182 (5th Cir. 1986) (finding deliberate indifference because defendants knew that decedent had attempted suicide in a previous confinement); Viero v. Bufano, 925 F. Supp. 1374, 1377-78, 1388 (N.D. Ill. 1996) (finding genuine issue of material fact because defendants knew about decedent's emotional health, his depression, his thoughts of suicide, and his need for medication); Guglielmoni v. Alexander, 583 F. Supp. 821 (D. Conn. 1984) (finding genuine issue because inmate hanged himself after previous faked suicide); Matje v. Leis, 571 F. Supp. 918 (S.D. Ohio 1983) (finding genuine issue because inmate's counsel had informed jailers of decedent's suicide threats).

/4 Moreover, the jail was arguably under constructive notice that some of its policies were not working. Less than a month before Novack was incarcerated, another prisoner committed suicide while supposedly under continuous

surveillance in the observation cell.

/5 While Reeves involved a judgment as a matter of law, the summary judgment analysis is identical. See 120 S. Ct. at 2110 ("[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986))).