In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1447

Estate of James H. Boncher,
by Bernice Boncher, Special
Administrator, et al.,

Plaintiffs-Appellants,

v.

Brown County, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98 C 1217--Rudolph T. Randa, Judge.

Argued September 5, 2001--Decided November 27, 2001


   Before Flaum, Chief Judge, and Posner and
Ripple, Circuit Judges.

   Posner, Circuit Judge.  James Boncher
committed suicide in a cell of the Brown
County (Wisconsin) jail, and this suit,
brought by his estate under 42 U.S.C.
sec. 1983, charges that the jail
officials, and the County itself, were
deliberately indifferent to the risk of
Boncher's suicide and so deprived him of
his life without due process of law. Bell
v. Wolfish, 441 U.S. 520, 535 n. 16
(1979); Salazar v. City of Chicago, 940
F.2d 233, 239-40 (7th Cir. 1991). The
district court granted summary judgment
for the defendants.

   Boncher had been arrested after a
domestic altercation. He had a long
history of alcoholism and had attempted
suicide at least three times, but this
history was not known to the arresting
officers or the personnel of the jail.
Nor did they know that he had often told
his ex-wife that he planned to kill
himself in jail so that a lawsuit could
be filed on behalf of his children.
Interviewed during the booking process,
Boncher answered "yes" when asked whether
he had mental or emotional problems, and
to the follow-up question whether he had
ever attempted suicide answered, "Yeah, a
couple days ago, but I am fine now." He

said this in what the officers thought a joking manner--his entire manner since the arrest had been jovial and cooperative, and the officers thought him a "happy drunk"--and when they followed up his answer by asking him whether he had any suicidal inclinations, he laughed and said he was "fine." One officer said, "It seemed like he was joking around and that's the impression that we got." So they put him in a regular cell rather than the jail's suicide-watch cell. He died within 45 minutes of being placed in the cell by hanging himself with a bedsheet.

The intake officers who decided that Boncher was not a suicide risk are not defendants. The claim is that the people running the jail, including the county sheriff, who is acknowledged to be Brown County for purposes of this case because he had the final authority in the county's governance structure for managing the jail, McMillian v. Monroe County, 520 U.S. 781, 784-85 (1997); Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion), were deliberately indifferent to the risk of suicide. As we noted recently, jail suicides are frequent relative to suicides of free people or even of prison (as distinct from jail) inmates. And the risk is concentrated in the early days and even hours of being placed in jail, before the inmate has had a chance to adjust to his dismal new conditions. Jutzi-Johnson v. United States, 263 F.3d 753, 757 (7th Cir. 2001). Jail managers who decided to take no precautions against the possibility of inmate suicide--to have no policy, for example no suicide-watch option--would be guilty of deliberate indifference in the relevant sense, Manarite v. City of Springfield, 957 F.2d 953, 957 (1st Cir. 1992); Greason v. Kemp, 891 F.2d 829, 839 (11th Cir. 1990); they would be ignoring a known and serious risk of death of persons under their control for whose safety they are responsible.

The risk is claimed to have been particularly acute here because there had been five suicides in the Brown County jail in the five years preceding Boncher's suicide. According to the plaintiffs' expert, Lindsay Hayes, a criminologist who specializes in the study of jail suicide, this number of

suicides was unusually high. He is a reputable criminologist, but in this case, as in two others we've discovered (Thacker v. Franklin County, No. 94APE01-01, 1994 WL 283672, at *4 (Ohio App. 1994) ("Hayes' affidavit generally lacks specificity and fails to indicate the facts underlying his conclusions"), and Boyd v. Harper, 702 F. Supp. 578, 582 (E.D. Va. 1988) (conclusion didn't support proposition for which it was offered)), his evidence was useless and should have been excluded under the Daubert standard. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-95 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Elliott v. CFTC, 202 F.3d 926, 934 (7th Cir. 2000); cf. Mid-State Fertilizer Co. v. Exchange National Bank of Chicago, 877 F.2d 1333, 1339 (7th Cir. 1989). It is not the number of suicides that is a meaningful index of suicide risk and therefore of governmental responsibility, Frake v. City of Chicago, 210 F.3d 779, 782 (7th Cir. 2000); Manarite v. City of Springfield, supra, 957 F.2d at 958, but the suicide rate, Horn by Parks v. Madison County Fiscal Court, 22 F.3d 653, 661 (6th Cir. 1994); and it is not even the rate by itself, but rather the rate relative to the "background" suicide rate in the relevant free population (the population of the area from which the jail draws its inmates) and to the rate in other jails. No evidence was presented that would have enabled an estimate of any of these rates--not even the population of Brown County was put into the record. Hayes admitted at his deposition that he had neither conducted nor consulted any studies that would have enabled him to compare the Brown County jail suicide rate with that of the free population in the county or that of other jails.

There was still another oversight--failure to allow for normal variance. It would not be sound to condemn a jail administrator if the rate of suicide in his population was within one or two standard deviations of the rate elsewhere, for that little variance might well be due to chance, or at least to factors over which he had not control. Every statistical distribution has an upper tail, and there is no constitutional principle that whoever is unlucky enough to manage the prisons in

the upper tail of the distribution of suicides must pay damages.

The deficiencies of Hayes's deposition compel us to treat Brown County's jail as one of average suicide risk and ask whether there is evidence from which it can be inferred that the jail management was deliberately indifferent to that risk. The plaintiffs emphasize the lack of training of the intake officers and the inadequacy of the checklist that they used in interviewing newly booked-in prisoners to determine whether they are suicide risks. The officers had only the most general training in recognizing a suicide risk, and this made them heavily dependent on the form. The form is poor, because while it contains a box to check if the prisoner has mental or emotional problems, the only follow-up question is, has he ever attempted suicide? Missing is any recognition of the possibility that the inmate might be about to make his first attempt (presumably not all those jail suicides that we've mentioned are of previous attempters, though we have no information on the point) and that it might succeed. One would think at a minimum that the inmate who admitted to mental or emotional problems would be asked what they were. If he answered that he suffered from clinical depression, that would alert the officers to a possible suicide risk, since clinical depression is a significant risk factor for suicide.

All this said, we don't think it adds up to evidence of deliberate indifference, especially in light of the fact that the Brown County jail is conceded to have been in compliance with the state's minimum standards for suicide prevention by jails. (Not that violation of a state law would demonstrate a denial of due process, e.g., Novack ex rel. Turbin v. County of Wood, 226 F.3d 525, 531-32 (7th Cir. 2000), or compliance with state law be an automatic defense, since the state law might not comply with constitutional standards.) There is no suggestion that anyone desired Boncher's suicide or any doubt that the intake officers believed that he was joking about a previous suicide attempt and that he was not a serious suicide risk. Sanville v. McCaughtry, 266 F.3d 724, 737-38 (7th Cir. 2001), is therefore distinguishable, because there, amidst other evidence of

profound mental disturbance, the plaintiff's decedent said he was suicidal, rather than denying it, as Boncher denied it, as did the plaintiff's decedent in Estate of Novack ex rel. Turbin v. County of Wood, supra, where we affirmed summary judgment for the defendants, 226 F.3d at 528, 532; similar cases are Heggs v. Grant, 73 F.3d 317, 320-21 (11th Cir. 1996) (per curiam), and Estate of Cartwright v. City of Concord, 618 F. Supp. 722, 728 (N.D. Cal. 1985), aff'd, 856 F.2d 1437 (9th Cir. 1988). The defendants simply were not alerted to the likelihood that Boncher was a genuine suicide risk. Cf. Jutzi-Johnson v. United States, supra, 263 F.3d at 756-58.

  The plaintiff is left to argue that the defendants exhibited deliberate indifference to suicide risk by failing to train the intake officers or adopt a better intake questionnaire. It is not clear what good the better training would have done, at least in this case; the basic judgment the intake officers had to make was whether Boncher was joking, and that is not a judgment likely to be much assisted by special training. Cf. Estate of Novack ex rel. Turbin v. County of Wood, supra, 226 F.3d at 532; Horn by Parks v. Madison County Fiscal Court, supra, 22 F.3d at 661. The form is defective, but because of a rather subtle problem--the failure to specify probing follow-up questions for inmates who indicate mental or emotional problems. That is a serious deficiency and one that ought to be corrected, if only to shield the defendants from liability for common-law negligence in suits under state law. But like other courts to consider the issue, we don't see how such a slip, at worst careless, could be proof evidence of something much worse, a deliberate failure to deal with a known high risk of death. See Yellow Horse v. Pennington County, 225 F.3d 923, 927-28 (8th Cir. 2000); Heggs v. Grant, supra, 73 F.3d at 320-21; Horn by Parks v. Madison County Fiscal Court, supra, 22 F.3d at 661; Rel lergert by Rellergert v. Cape Girardeau County, 924 F.2d 794, 797 (8th Cir. 1991); Belcher v. Oliver, 898 F.2d 32, 34-35 (4th Cir. 1990); Molton v. City of Cleveland, 839 F.2d 240, 246 (6th Cir. 1988).

  There was no constitutional violation, and so there is no occasion to consider

the individual defendants' defense of
qualified immunity. Estate of Phillips v.
City of Milwaukee, 123 F.3d 586, 597 (7th
Cir. 1997).

Affirmed.