*383 SYKES, Circuit Judge,
with whom BAUER, FLAUM, and KANNE, Circuit Judges, join, dissenting.
Today the court endorses Monell liability without evidence of,corporate fault or causation. That contradicts long-settled principles of municipal liability under § 1983. The doctrinal shift is subtle but significant. The court rests its decision on the conceptual idea that a gap in official policy can sometimes be treated as an actual policy for purposes of municipal liability under Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). I have no quarrel with that as a theoretical matter. A municipality’s failure to have a formal policy in place on a particular subject may represent its intentional decision not to have such a policy — that is, a policy not to have a policy — and that institutional choice may in appropriate circumstances form the basis of a Monell claim. The Supreme Court’s cases, and ours, leave room for this theory of institutional liability under § 1983.
But identifying an official policy is just the first step in Monell analysis; it is not the whole ballgame. Evidence of an official policy or custom is a necessary but not sufficient condition to advance a Monell claim to trial. The plaintiff also must adduce evidence on two additional elements: (1) institutional fault, which in this context means the municipality’s deliberate indifference to a known or obvious risk that its policy will likely lead to constitutional violations; and (2) causation. Because Monell doctrine applies to private corporations that contract to provide essential governmental services, see Shields v. Ill. Dep’t of Corr., 746 F.3d 782, 789-90 (7th Cir. 2014); Iskander v. Village of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982), these requirements apply in full to Mrs. Glisson’s claim against Corizon, Indiana’s prison healthcare provider, for the death of her son while in state custody.
But Mrs. Glisson produced no evidence to support the fault and causation elements of her claim. My colleagues identify none, yet they hold that a reasonable jury could find in her favor. I do not see how, without evidence on two of the three elements of the claim. The court’s decision thus materially alters Monell doctrine in this circuit. With respect, I cannot join it.
To understand how the court’s decision works a change in the law, it’s helpful to begin with Monell itself. The familiar holding of the case is that § 1983 provides a remedy against a municipality for its own constitutional torts but not those of its employees or agents; the statute doesn’t authorize vicarious liability under the common-law doctrine of respondeat superior. Monell, 436 U.S. at 691-92, 98 S.Ct. 2018.
To separate direct-liability claims from vicarious-liability claims, the Supreme Court announced the now-canonical “policy or custom” requirement:
Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body’s officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 “person,” by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental “custom” even though such a custom has not received formal approval through the body’s official decisionmaking channels.
*384 Id. at 690-91, 98 S.Ct. 2018 (footnote omitted). Put more succinctly, Monell holds that when a plaintiff seeks to impose liability on a municipality under § 1983, he must have evidence that a municipal policy or custom — or the act of an authorized final policymaker, which amounts to the same thing — actually caused his constitutional injury.
But Monell sketched only the outlines of the doctrine; it took later decisions to fill in the details. Most pertinent here is Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). There the Court provided a primer for how to apply Monell doctrine in actual practice. But first the Court elaborated on the rationale for the policy-or-custom requirement:
Locating a “policy” ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a “custom” that has not been formally approved by an appropriate decision-maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.
Id. at 403-04, 117 S.Ct. 1382 (emphasis added) (citation omitted).
The Court made it clear, however, that identifying an official policy or widespread custom is not sufficient to support a finding of liability:
[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the “moving force” behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.
Id. at 404, 117 S.Ct. 1382 (second emphasis added). The culpability requirement — what I’ve referred to as “corporate fault” or “institutional fault” — must be tied to the specific alleged constitutional violation. Id. at 405, 117 S.Ct. 1382. The causation element requires evidence that the municipality’s own action directly caused the constitutional injury.
Brown involved a Monell claim by a plaintiff who was injured when a sheriffs deputy pulled her from a car and forced her to the ground during an arrest after a high-speed chase. Id. at 400-01, 117 S.Ct. 1382. The deputy had amassed a criminal record before joining the sheriffs department — misdemeanor convictions for battery, resisting arrest, and public drunkenness — but the sheriff hadn’t reviewed it closely before hiring him. Id. at 401, 117 S.Ct. 1382. The injured plaintiff sued the county under Monell, attributing her injury to the sheriffs lax hiring practices. Id.
The Court rejected the claim, holding that a single instance of excessive force — the plaintiffs own injury — wasn’t enough to trigger municipal liability. Id. at 415, 117 S.Ct. 1382. The Court began by tracing Monell’s basic requirements— an express policy or widespread custom, municipal fault, and causation — and then explained how these elements apply in different types of cases. First up were the obvious cases. The Court explained that when a Monell claimant alleges that “a particular municipal action itself violates federal law, ... resolving ... issues of fault and causation is straightforward.” Id. at 404, 117 S.Ct. 1382. “[PJroof that a municipality’s legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected *385 right necessarily establishes that the municipality acted culpably.” Id. at 405, 117 S.Ct. 1382 (emphasis added). In the same way, when a legislative decision or an act of a final policymaker itself violates federal law, causation is clear and nothing more is needed; in that situation the act is necessarily the “moving force” behind the plaintiffs injury. Id.
Most Monell claims are more complicated, however, and Mrs. Glisson’s claim is not in this straightforward category. She does not contend that Corizon’s failure to promulgate formal protocols for chronically ill inmates itself violated the Constitution. My colleagues concede the point, acknowledging that Corizon’s failure to adopt protocols for chronically ill inmates “does not [in itself] describe an Eighth Amendment violation.” Majority Op. at p. 380. Where, as here, the challenged policy or custom is not itself unlawful, something more is required to establish corporate culpability and causation.
Helpfully, Brown contains further instructions for Monell claims like this one that do not rest on allegations that a municipal policy on its face violates federal law. This part of Brown begins with a warning that’s worth repeating here. The Court cautioned that Monell claims “not involving an allegation that the municipal action itself violated federal law ... present much more difficult problems of proof.” Brown, 520 U.S. at 406, 117 S.Ct. 1382. Difficulties arise because claims of this type necessarily rest on the theory that a municipal policy or custom, though not itself unconstitutional, nonetheless led to constitutional torts by municipal employees acting in accordance with it. Mo-nell claims in this category blur the line between municipal liability and respondeat superior liability; the Court worried that the line would collapse in actual practice. Id. at 407-08, 117 S.Ct. 1382. To guard against that risk, the Court instructed the judiciary to “adhere to rigorous requirements of culpability and causation” when evaluating Monell claims of this kind. Id. at 415, 117 S.Ct. 1382 (“Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability”).
More specifically, the Court held that a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiffs rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.
Id. at 407, 117 S.Ct. 1382 (emphasis added) (citation omitted) (internal quotation marks omitted). For this holding the Court drew on principles announced in its earlier decision in City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), which involved a claim that shift supervisors at a city jail were inadequately trained to recognize an inmate’s need for psychiatric intervention. Brown described Harris’s holding this way:
We concluded [in Harris] that an “inadequate training” claim could be the basis for § 1983 liability in “limited circumstances.” [489 U.S.] at 387 [109 S.Ct. 1197]. We spoke, however, of a deficient training “program,” necessarily intended to apply over time to municipal employees. Id. at 390 [109 S.Ct. 1197]. Existence of a “program” makes proof of fault and causation at least possible in an inadequate training case. If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they *386 know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the “deliberate indifference” — necessary to trigger municipal liability. ... In addition, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the “moving force” behind the plaintiffs injury.
Brown, 520 U.S. at 407-08, 117 S.Ct. 1382 (emphasis added).
Harris, in turn, drew on City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). There a plurality of the Court observed that “where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the ‘policy’ and the constitutional deprivation.” Id. at 824, 105 S.Ct. 2427 (opinion of Rehnquist, J.) (footnotes omitted).
Together these decisions stand for the proposition that a Monell plaintiffs own injury, without more, is insufficient to establish municipal fault and causation. The plaintiff must instead present evidence of a pattern of constitutional injuries traceable to the challenged policy or custom — or at least more than one. Only then is the record sufficient to permit an inference that the municipality was on notice that its policy or custom, though lawful on its face, had failed to prevent constitutional torts. Put slightly differently, the plaintiffs own injury, standing alone, does not permit an inference of institutional deliberate indifference to a known risk of constitutional violations. “Nor will it be readily apparent that the municipality’s action caused the injury in question, because the plaintiff can point to no other incident tending to make it more likely that the plaintiffs own injury flows from the municipality’s action, rather than from some other intervening cause.” Brown, 520 U.S. at 408-09, 117 S.Ct. 1382.
In short, except in the unusual case in which an express policy (or an act of an authorized policymaker) is itself unconstitutional, a Monell plaintiff must produce evidence of a series of constitutional injuries traceable to the challenged municipal policy or custom; the failure to do so means a failure of proof on the fault and causation elements of the claim. Brown is unequivocal on this point: If the plaintiff can point only to his own injury, “the danger that a municipality will be held liable without fault is high” and the claim ordinarily fails. Id. at 408, 117 S.Ct. 1382.
It’s true that Brown and Harris do not foreclose the possibility that the requirement of pattern evidence might be relaxed in a narrow set of circumstances where the likelihood of recurring constitutional violations is an obvious or “highly predictable consequence” of the municipality’s policy choice. Id. at 409-10, 117 S.Ct. 1382. Addressing the inadequate-training context in particular, Brown acknowledged the “possibility” that “evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such violation, could trigger municipal liability.” Id. at 409, 117 S.Ct. 1382. But the Court took great pains to emphasize the narrowness of this “hypothesized” exception:
In leaving open [in Harris] the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional viola *387 tions, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens’ rights could justify a finding that [the] policymakers’ decision not to train the officer reflected “deliberate indifference” to the obvious consequence of the policymakers’ choice — namely, a violation of a specific constitutional or statutory right. The high degree of predictability may also support an inference of causation— that the municipality’s indifference led directly to the very consequence that was so predictable.
Id. at 409-10, 117 S.Ct. 1382.
Despite the contextual language, I see no reason to think that this hypothetical path to liability in the absence of pattern evidence is open only in failure-to-train cases. So I agree with my colleagues that evidence of repeated constitutional violations is not always required to advance a Monell claim to trial. But it’s clear that this path to corporate liability is quite narrow. If the plaintiff lacks evidence of a pattern of constitutional injuries traceable to the challenged policy or custom, Monell liability is not possible unless the evidence shows that the plaintiff’s situation was a recurring one (i.e., not unusual, random, or isolated) and the likelihood of constitutional injury was an obvious or highly predictable consequence of the municipality’s policy choice. The Court’s use of the terms “obvious” and “highly predictable” is plainly meant to limit the scope of this exception to those truly rare eases in which the policy or custom in question is so certain to produce constitutional harm that inferences of corporate deliberate indifference and causation are reasonable even in the absence of any prior injuries — that is, in the absence of the kind of evidence normally required to establish constructive notice.
Our cases have always followed this understanding of Monell doctrine. We have held that a gap in municipal policy can sometimes support a Monell claim. See, e.g., Dixon v. County of Cook, 819 F.3d 343, 348 (7th Cir. 2016); Thomas v. Cook Cty. Sheriff's Dep’t, 604 F.3d 293, 303 (7th Cir. 2009); Calhoun v. Ramsey, 408 F.3d 375, 380 (7th Cir. 2005). But we have also recognized that claims grounded on the failure to have a policy must be scrutinized with great care. Calhoun, 408 F.3d at 380 (“At times, the absence of a policy might reflect a decision to act unconstitutionally, but the Supreme Court has repeatedly told us to be cautious about drawing that inference.” (citing Brown, 520 U.S. at 409, 117 S.Ct. 1382; Harris, 489 U.S. at 388, 109 S.Ct. 1197)).
And in all cases we have consistently required Monell plaintiffs to produce evidence of more than one constitutional injury traceable to the challenged policy or custom (unless, of course, the policy or custom is itself unconstitutional, in which case the singular wrong to the plaintiffs is clearly attributable to the municipality, rather than its employees). See, e.g.,.Chatham v. Davis, 839 F.3d 679, 685 (7th Cir. 2016) (explaining that Monell claims “normally require evidence that the identified practice or custom caused multiple injuries”); Daniel v. Cook County, 833 F.3d 728, 734 (7th Cir. 2016) (explaining that a MoneU plaintiff “must show more than the deficiencies specific to his own experience” and allowing the claim to proceed based on a Department of Justice report documenting multiple instances of inadequate medical care in the jail); Dixon, 819 F.3d at *388 348-49 (same); Calhoun, 408 F.3d at 380 (explaining that a Monell claim ordinarily “requires more evidence than a single incident to establish liability”); Palmer v. Marion County, 327 F.3d 588, 596 (7th Cir. 2003) (same); Gable v. City of Chicago, 296 F.3d 531, 538 (7th Cir. 2002) (same); Estate of Novack ex rel. Turbin v. County of Wood, 226 F.3d 525, 531 (7th Cir. 2000) (A Monell plaintiff must show that “the policy itself is unconstitutional” or produce evidence of “a series of constitutional violations from which [institutional] deliberate indifference can be inferred.”).
Finally, following the Supreme Court’s lead in Brown and Harris, we have left open the possibility that a Monell claim might proceed to trial based on the plaintiffs injury alone, but only in rare cases where constitutional injury is a manifest and highly predictable consequence of the municipality’s policy choice. See Chatham, 839 F.3d at 685-86; Calhoun, 408 F.3d at 381. So far, we’ve allowed recovery under this exception only once, in a case involving a jail healthcare provider’s failure to ensure that its suicide-prevention protocols were scrupulously followed. See Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917 (7th Cir. 2004).
To be more specific, in Woodward a jail’s private healthcare provider had guidelines in place for inmate suicide risk identification and prevention. Id. at 921. An inmate committed suicide 16 days after he was booked into the jail; his estate sued the corporate healthcare provider alleging a systemic failure to enforce compliance with the guidelines. Id. at 919-20. The evidence at trial established that the provider neither trained its employees on how to use the guidelines nor monitored their compliance with them, and in fact had long condoned widespread violations of the nominally mandatory procedures. Id. at 925-29. A jury returned a verdict for the estate and we affirmed. Although there was no evidence of prior suicides at the jail, we held that Monell liability was appropriate because inmate suicide is an obvious and highly predictable consequence of a jail healthcare provider’s thoroughgoing failure to enforce its suicide-prevention program. Id. at 929.
This case is not at all like Woodward. While it’s patently obvious that a systemic failure to enforce a jail suicide-prevention program will eventually result in inmate suicide, inmate death is not an obvious or highly predictable consequence of the alleged policy lapse at the center of this case. Mrs. Glisson claims that Corizon’s failure to promulgate formal guidelines for the care of chronically ill inmates as required by INDOC Directive HCSD-2.06 caused her son’s death. Everyone agrees that nothing in “the Constitution or any other source of federal law required Cori-zon to adopt the Directive[ ] or any other particular document.” Majority Op. at p. 382. So evidence is needed to prove corporate culpability and causation; in the usual case, this means evidence of a series of prior similar injuries. But Mrs. Glisson presented no evidence that other inmates were harmed by the failure to have protocols in place as required by the Directive.
In the absence of prior injuries, Corizon was not on notice that protocols were needed to prevent constitutional torts. So Mrs. Glisson cannot prevail unless she can show that inmate death was an obvious or highly predictable consequence of the failure to promulgate formal protocols of the type specified in HCSD-2.06.
She has not done so. Her expert witness, Dr. Dianne Sommer, did not offer an opinion on the subject; the doctor’s declaration states only that certain aspects of Nicholas Glisson’s treatment fell below the standard of care. My colleagues insist that “[o]ne does not need to be an expert to know that *389 complex, chronic illness requires comprehensive and coordinated care.” Majority-Op. at p. 382. Perhaps not, but it’s conceptually improper to frame the issue at that level of generality.
This is a complicated medical-indifference case. It’s far from obvious that formal protocols of the sort required by Directive HCSD-2.06 were needed to prevent constitutional torts of the kind allegedly suffered by Nicholas Glisson. The Directive itself is entirely nonspecific. It contains only the following instructions: (1) “[o]ffenders with serious chronic health conditions need to receive planned care in a continuous fashion”; (2) chronic conditions must be identified and “a treatment plan must be established”; and (3) the treatment plan “should be maintained current” and “[a]s care needs change, the treatment plan should be updated.” In other words: Have a treatment plan and update it as needed.
During discovery Mrs. Glisson asked Corizon to produce “all policies, procedures, and/or protocols relied on in developing the course of treatment for Nicholas Glisson.” Corizon objected based on over-breadth and asked for a more targeted document request. Subject to the objection, Corizon gave this response: “Mr. Glis-son’s medical care and treatment at IDOC were based on standards of medical and nursing care, and generally were not dictated by written policies, procedures or protocols.”
My colleagues do not explain how Cori-zon’s adherence to professional standards of medical and nursing care amounts to deliberate indifference to a known or obvious risk of harm. More to the point, they do not explain how inmate death was an obvious or highly predictable consequence of Corizon’s failure to promulgate protocols in compliance with the very loose and highly generalized instructions contained in Directive HCSD-2.06. Unlike the jail-suicide case, it is neither self-evident nor predictable — let alone highly predictable— that Corizon’s reliance on professional standards of medical and nursing care (instead of HCSD-2.06-compliant protocols) would lead to constitutional injuries of the sort suffered by Nicholas Glisson.
My colleagues say that the absence of formal protocols for chronically ill inmates created “a well-recognized risk” and “Cori-zon had notice of the problems posed by a total lack of coordination.” Majority Op. at p. 382. No evidence supports these assertions. No expert testified that the standard of care requires a corporate healthcare provider to promulgate formal protocols on this subject, so the record doesn’t even clear, the bar for simple negligence. Monell liability requires proof of culpability significantly greater than simple negligence. It also requires evidence that Corizon’s action — not the actions of its doctors and nurses — -directly caused the injury. There is no such evidence here. Without the necessary evidentiary support, a jury cannot possibly draw the requisite inferences of corporate fault and causation. On this record, a verdict for Mrs. Glisson is not possible.
More broadly, by eliding the normal requirement of pattern evidence and relying instead on sweeping and unsubstantiated generalizations about the obviousness of the risk, my colleagues have significantly expanded a previously narrow exception to the general rule that a valid Monell claim requires evidence of prior injuries in order to establish corporate deliberate indifference and causation. The Supreme Court has instructed us to rigorously enforce the requirements of corporate culpability and causation to ensure that municipal liability does not collapse into vicarious liability. Today’s decision does not heed that instruction.
*390 Nicholas Glisson arrived in Indiana’s custody suffering from complicated and serious medical conditions. Some of Cori-zoris medical professionals may have been negligent in his care, as Dr. Sommer maintains, and their negligence may have hastened his death. That’s a tragic outcome, to be sure; if substantiated, the wrong can be compensated in a state medical-malpractice suit. Under traditional principles of Monell liability, however, there is no basis for a jury to find that Corizon was deliberately indifferent to a known or obvious risk that its failure to adopt formal protocols in compliance with HCSD-2.06 would likely lead to constitutional violations. Nor is there a factual basis to find that this alleged gap in corporate policy caused Glis-son’s death. Accordingly, I would affirm the summary judgment for Corizon.