In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1309

DENISE COLLINS, Individually
and as Personal Representative
of the Estate of Ricky Collins, Deceased,

*Plaintiff-Appellant,*

*v.*

CAPTAIN DEBORAH SEEMAN,
SERGEANT JULIE BEETHEM,
CORRECTIONAL OFFICER STEVE SHUCK,
CORRECTIONAL OFFICER SAM BUCALO,
and any other Correctional Officers presently
unknown responsible for Ricky Collins's
supervision and care, jointly and severally,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 4493—**Charles P. Kocoras**, *Judge.*

ARGUED DECEMBER 7, 2005—DECIDED SEPTEMBER 11, 2006

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Ricky Collins committed suicide in his prison cell at the Sheridan Correctional Center in Sheridan, Illinois. Approximately fifty-five minutes

before the suicide was discovered, Collins told a correctional officer that he wanted to see the prison crisis counselor because he was feeling suicidal. The officer relayed the request up the chain of command, but as it was passed along, the information that Collins was feeling suicidal was apparently dropped and the message was transmitted as a generic request to see the crisis counselor. In the meantime, however, the officer returned to Collins's cell and told him the counselor had been called and would respond as soon as she could. Collins told the officer that he was all right and could wait until the counselor arrived. Correctional officers checked on Collins twice more in the intervening thirty minutes and nothing was amiss. At some point before the next cell check—about twenty minutes after the last—Collins hanged himself in his cell using a bed sheet.

Collins's mother, Denise Collins, for herself and on behalf of her son's estate, brought this action under 42 U.S.C. § 1983 against several correctional officers at Sheridan Correctional alleging that they were deliberately indifferent to a substantial risk that Collins would take his own life, in violation of his rights under the Eighth Amendment. The district court granted summary judgment in favor of the defendants. We affirm.

## I. Discussion

On September 27, 2001, at 5:55 p.m., Collins was in his cell at the Sheridan Correctional Center, where he was serving a five-year sentence for an Illinois conviction for aggravated battery. As Correctional Officer Steven Shuck made his rounds, he observed Collins staring at the wall and asked if Collins was feeling well. Collins responded that he wanted to see the prison crisis counselor. When Shuck asked why, Collins responded that he was "feeling suicidal." The request for the crisis counselor was immediately passed up the chain of command, first from Officer Shuck to the

control room, where the message was called in to Captain Deborah Seeman, the Shift Commander. Although Officer Shuck remembers relaying the information that Collins was "feeling suicidal," this part of the message was apparently left out of the exchange of information once it passed through the control room; the message transmitted from this point forward was only that Collins had requested a meeting with the crisis counselor.

Captain Seeman instructed the control room officer to contact Sergeant Julie Beethem, the crisis counselor on duty at the time. Sergeant Beethem was called, but she was at that moment in the process of escorting a group of 200 inmates from the gym back to their cells. At 6:10 p.m., fifteen minutes after Collins had made the request, Beethem received the message that Collins had asked to see her.

Also at 6:10 p.m., Officer Shuck returned to Collins's cell and informed him that Sergeant Beethem had been called and would be there as soon as she was finished escorting prisoners. Collins responded that he was all right and could wait until Beethem arrived. Collins was not placed on formal suicide watch at this time because prison policy provided that suicide watches are instituted after the prisoner has been evaluated by a crisis counselor and the counselor makes a recommendation to the "crisis team leader" that the procedure is necessary.

Between 6:10 and 6:30 p.m., Officer Shuck looked in on Collins at least one more time and observed nothing unusual. At approximately 6:25 p.m., Officer Sam Bucalo returned from his dinner break and relieved Officer Shuck as the officer responsible for monitoring the cells on Collins's cellblock. Bucalo was informed that Collins had requested and was awaiting the arrival of the crisis counselor. At about 6:30 p.m., Officer Bucalo checked on Collins and observed him sitting in his cell, but did not speak to him.

When Bucalo returned to the control center from this cell inspection at approximately 6:35 p.m., Captain Seeman was there and instructed officers to keep an eye on Collins until the counselor arrived. Fifteen minutes after this meeting, at 6:50 p.m., Bucalo returned to Collins's cell and found him hanging from a bed sheet tied to a ceiling pipe. At the time Collins's body was discovered, Sergeant Beethem was in the health care unit, where she had "just opened" Collins's file to prepare for their meeting. Collins died from hanging, but he also had self-inflicted abrasions on his left wrist that were apparently made by a piece of broken glass taken from his own eyeglasses.

The third amended complaint in this case alleged that Seeman, Bucalo, Shuck, and Beethem, sued in their individual capacities, acted with deliberate indifference to a known risk of suicide, contrary to Collins's rights under the Eighth Amendment. The district court entered summary judgment in favor of the correctional officers. The court first found that the plaintiff had failed to properly respond to the defendants' factual submissions as required by local rule, thereby rendering the defendants' factual assertions uncontested.[1] On the merits, the court held that each

---

[1] Collins attempted to inject additional facts into the case in the form of unsworn written summaries prepared by investigators from unsworn statements made by other prisoners housed on Collins's cell block at the time of his suicide. These prisoner interviews were apparently taken in the course of an internal prison investigation following Collins's death. The district court did not consider the content of these statements in its summary judgment decision, and we conclude that this was proper. The prisoners' unsworn statements do not satisfy the requirements of FED. R. CIV. P. 56(e) that summary judgment materials be "made upon personal knowledge, [and] shall set forth such facts as would be admissible in evidence . . . ." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 323 (3d Cir. 2005); *Haywood v. Lucent*
(continued...)

defendant had acted in a reasonable manner in response to Collins's request to see the counselor, and none had acted with the deliberate indifference necessary to establish Eighth Amendment liability pursuant to 42 U.S.C. § 1983.

## II. Discussion

Our review of the district court's decision to grant summary judgment to the defendants is de novo. *Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003). A § 1983 claim based upon a violation of the Eighth Amendment has both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). In prison suicide cases, the objective element is met by virtue of the suicide itself, as "[i]t goes without saying that 'suicide is a serious harm.'" *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001).

Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk. *Matos*, 335 F.3d at 557; *see also Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (defendant must be aware of the significant likelihood that an inmate may imminently seek to take his own life

---

[1] (...continued)
*Technologies, Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (inadmissible hearsay cannot be used to overcome a properly supported motion for summary judgment).

and must fail to take reasonable steps to prevent the inmate from performing the act).

With respect to the first showing, "it is not enough that there was a danger of which a prison official *should have been* aware," rather, "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Novack*, 226 F.3d at 529 (emphasis added). In other words, the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life. *Id.*; *Sanville*, 266 F.3d at 737 (issue is whether the defendant was subjectively "aware of the substantial risk that [the deceased prisoner] might take his own life"). Liability cannot attach where "the defendants simply were not alerted to the likelihood that [the prisoner] was a genuine suicide risk." *Boncher ex rel. Boncher v. Brown County*, 272 F.3d 484, 488 (7th Cir. 2001).

The requirement of subjective awareness of a suicide risk is dispositive as to defendants Seeman, Bucalo, and Beethem. With respect to these defendants, the record is devoid of any evidence from which it could be inferred that they were alerted to the likelihood that Collins was at substantial risk for committing suicide. These defendants were made aware that Collins had requested to see the crisis counselor, but they were not informed of the reason for the request. The undisputed facts of record indicate that inmates often request meetings with crisis counselors for reasons both serious and mundane, and sometimes make such requests as a means of manipulating prison staff. Thus, a request to see a crisis counselor, standing alone, is not sufficient to put a defendant on notice that an inmate poses a substantial and imminent risk of suicide.[2]

---

[2] The plaintiff points to evidence in Collins's prison medical records that he had been consulting with prison psychologists, but

(continued...)

Officer Shuck is in a different position because Collins specifically told him that he was feeling suicidal. But it is undisputed that Officer Shuck immediately notified the control room of Collins's request to see the crisis counselor and then returned to Collins's cell and informed him that the counselor had been called and would be there as soon as possible. Collins responded that he would be all right until the counselor arrived. Accordingly, assuming Shuck had a subjective awareness of an "imminent" threat to Collins's safety at 5:50 p.m., that threat had substantially abated fifteen minutes later when Collins assured Shuck he would be all right until the counselor arrived.

In addition, assuming that Officer Shuck could be said to have a subjective awareness of a substantial risk of suicide despite this assurance from Collins, there is no evidence to support an inference that he was deliberately indifferent to that risk. Deliberate indifference requires a showing of "more than mere or gross negligence, but less than the purposeful or knowing infliction of harm." *Matos*, 335 F.3d at 557; *Estate of Novack*, 226 F.3d at 529. We have characterized the required showing as "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir.

---

[2] (...continued)
this by itself is insufficient; she must also come forward with evidence that the defendants named in this suit were aware of the information contained in those records about Collins's psychological history. *See Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003). She has not done so. Furthermore, the records themselves indicate that while Collins reported feeling "scared, anxious, and depressed," he specifically denied having any suicidal impulses. "[N]ot every prisoner who shows signs of depression or exhibits strange behavior can or should be put on suicide watch." *Id.* at 558.

1992). To establish deliberate indifference, a plaintiff must present evidence that an individual defendant intentionally disregarded the known risk to inmate health or safety. *Matos*, 335 F.3d at 557. A defendant with knowledge of a risk need not "take perfect action or even reasonable action[,] . . . his action must be reckless before § 1983 liability can be found." *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003).

We agree with the district court that there is no evidence from which a jury could infer that Officer Shuck recklessly or intentionally disregarded a known risk of suicide. To the contrary, the evidence properly of record demonstrates that Officer Shuck immediately informed the control room that Collins had requested the assistance of a crisis counselor and was "feeling suicidal." Upon relaying the request, Shuck did not take up other duties or sit idle, but returned to Collins's cell and informed Collins that the counselor had been called and would be there as soon as possible. Shuck received an assurance from Collins that he would be all right and could wait until the counselor arrived. At some point within the next fifteen to twenty minutes, Officer Shuck returned to Collins's cell a third time to make certain that nothing was wrong. At this point, Officer Bucalo assumed responsibility for monitoring Collins, and he did so, within ten minutes of Shuck's last cell check.

The deliberate indifference standard imposes a "high hurdle" for a plaintiff to overcome. *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). Although Collins initially informed Officer Shuck that he was feeling suicidal, the undisputed evidence establishes that just a few minutes later he told the officer he would be all right until the crisis counselor arrived. After relaying Collins's request for the crisis counselor, Shuck continued to monitor Collins until Officer Bucalo took over. There is nothing in this record to

support an inference that Shuck intentionally disregarded a known, imminent suicide risk.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*