In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3325

EUGENE BROWN,

*Plaintiff-Appellant,*

*v.*

LARRY J. PHILLIPS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 10-cv-3163 — **Sue E. Myerscough**, *Judge.*

SUBMITTED SEPTEMBER 2, 2015[*] — DECIDED SEPTEMBER 14, 2015

Before WOOD, *Chief Judge*, and POSNER and ROVNER,
*Circuit Judges.*

ROVNER, *Circuit Judge.* Eugene Brown is civilly committed
to the Rushville Treatment and Detention Center under Illi-
nois's Sexually Violent Persons Commitment Act. The Act

[*] After examining the briefs and the record, we have concluded that oral
argument is unnecessary. Thus the appeal is submitted on the briefs and
the record. *See* FED. R. APP. P. 34(a)(2)(C).

authorizes detention of persons who are determined through a civil proceeding to be a "sexually violent person." *See* 725 ILCS 207/40. Brown and 17 others confined at Rushville sued the facility's officials and clinical staff under 42 U.S.C. § 1983. They allege that policies restricting their access to movies, video games, and video game consoles violate the First Amendment. The district court entered summary judgment for the defendants, and only Brown appealed. Because the record does not contain a sufficient basis to conclude that the ban on movies and video games is reasonably related to the state's interests in security and rehabilitation, we vacate the judgment in part.

A "sexually violent person" includes someone who has been convicted of a sexually violent offense and "suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f). Brown was convicted of five counts of aggravated sexual assault for raping adult women. *See In re Commitment of Brown*, No. 1-11-0732, 2012 WL 6962055, *1, *3–4 (Ill. App. Ct. Oct. 30, 2012). He was diagnosed with paraphilia (specifically, sexual attraction to non-consenting women) and personality disorder with antisocial and narcissistic traits. *Id.* at *4–5. If, as in Brown's case, a court or jury finds beyond a reasonable doubt that the person is sexually violent, he is committed to the custody of the Illinois Department of Human Services "for control, care and treatment until such time as the person is no longer a sexually violent person." 725 ILCS 207/5(a), 207/35(f), 207/40(a).

Before this lawsuit began, Rushville prohibited its residents from watching all R-rated movies and playing any M-rated video game. (The rating "M" for "mature" is defined

by the Entertainment Software Rating Board as denoting material that is "generally suitable for ages 17 and up" and may "contain intense violence, blood and gore, sexual content and/or strong language." *See ESRB Ratings Guide*, ENTERTAINMENT SOFTWARE RATING BOARD, http://www.esrb.org/ratings/ratings_guide.jsp (last visited Sept. 3, 2015).) After Brown sued to contend that these prohibitions violated the First Amendment, Rushville replaced its complete ban on all R and M-rated media with a list of banned movies and video games. In addition, after this suit began, Rushville discovered that two residents were using a video game console to access the internet to view forbidden material. So Rushville also banned residents from possessing video game consoles capable of accessing the internet. These new restrictions led Brown to contend that Rushville had retaliated against him for suing.

The most recent list of censored content bans 353 movies and 232 video games. Rushville says that this list includes only movies "with sexual and/or graphic violent themes deemed especially counter-therapeutic." Therapists at Rushville apparently review a movie or video game upon a resident's request for the media. For example, one movie titled *Immortals*, an action film about the Greek demi-god Theseus, was banned because, according to a therapist's review, the movie depicts a "[n]ude woman–seen from back and side, sex scenes (nothing is actually seen, but it is simulated), bare breasts[,] and implied sex" and "[s]trong bloody violence and [s]exuality."

The parties cross-moved for summary judgment. Relying on *Turner v. Safley*, 482 U.S. 78 (1987), the defendants maintained that dual policies banning media content and game

consoles are constitutional because they are reasonably related to the state's interests in rehabilitation and security. To support the ban on movies and video games, the defendants supplied two affidavits, one from Dr. Shan Jumper, a psychologist and the clinical director at Rushville (and a defendant), and Gregg Scott, the program director at Rushville (also a defendant). Dr. Jumper swears that the ban promotes "a safe and healthy environment," but he does not explain why. Scott repeats Dr. Jumper's conclusion, but also omits the basis for it. Scott states only that it "would be contrary" to treatment and security goals "to permit a resident to have uncontrolled access to movies and video games of his preference containing graphic depictions of violence, sex, drug use, and criminal culture when he is being detained and treated for a mental disorder related to a prior act(s) of sexual violence." Brown criticized these opinions for two reasons: the clinical staff has never evaluated any detainee to assess whether watching sex and violence adversely affects them, and the affiants relied on common sense rather than any empirical data or research to support their conclusions. The defendants candidly acknowledged their lack of data, explaining that "[t]he analysis to determine if policies are reasonably related to the facility's interest does not focus on an individual assessment and do not need to be supported by empirical evidence."

The defendants also offered evidence to justify, on both therapeutic and security grounds, the ban on game consoles. Scott asserted in his affidavit that the policy prevents "residents from frustrating their treatment by having unrestricted access to counter-therapeutic information, contacting the victims of their sexually violent offenses, or engaging in further crime." The ban, he added, also prevents residents from us-

ing the console's hard drive to smuggle "contraband" into the facility (like child pornography) and eliminates consoles as an "unregulated currency." In response to Brown's argument that the policy is overbroad because it need ban only Wi-Fi-enabled consoles, the defendants submitted an affidavit from Jason White, an information systems analyst at the facility. White stated that even if consoles could be purchased without Wi-Fi hardware, the consoles still could wirelessly connect to the internet by plugging into the console's Ethernet or USB port a device that would convert the cable-only device to a wireless device. A resident could then connect to the internet in several ways, including simply asking outsiders to emit a wireless signal from a cell phone in the parking lot.

The district court granted the defendants' motions for summary judgment. First, it ruled that *Turner*'s reasonable-relationship standard, rather than the more exacting scrutiny that Brown preferred, applied to civil detainees. Then it assessed the restriction on movies and video games. It concluded that the affidavits of Dr. Jumper and Scott articulated "legitimate security, safety, and therapeutic goals which the restrictions are logically designed to achieve." The court added that their conclusions are "rational based on the nature of the facility and the nature of the range of mental disorders from which the detainees suffer." The court also applied *Turner* to conclude that the policy prohibiting most consoles is reasonably related to the facility's interests in preventing residents from obtaining, storing, and trading pornography and "other counter-therapeutic materials." Finally, because the policies do not violate the residents' First Amendment rights, the court concluded that the retaliation claims also fail.

Brown maintains on appeal that the district court erred in upholding Rushville's bans. As a preliminary matter, we address what legal standard governs civil detainees' First Amendment claims. Other circuits have applied *Turner* to evaluate civil detainees' civil-rights claims. *See Pesci v. Budz*, 730 F.3d 1291, 1298 (11th Cir. 2013); *Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012); *Ahlers v. Rabinowitz*, 684 F.3d 53, 65–66 (2d Cir. 2012). We too have said that "it would not be too difficult to adopt [*Turner*'s reasonable-relationship] standard for claims by civil detainees," so long as the standard is modified to recognize "the different legitimate interests that governments have with regard to prisoners as compared with civil detainees." *Lane v. Williams*, 689 F.3d 879, 884 (7th Cir. 2012). One recognized difference is that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982). We also have recognized as legitimate the state's interests in the security of the facility and the incapacitation and treatment of civil detainees. *Lane*, 689 F.3d at 884; *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003).

Keeping in mind the detainee's and state's interests when the state detains sexually violent persons, we think that *Turner's* rational-relationship test provides the appropriate structure to analyze Brown's claims. *Turner* requires that, for the state to restrain a civil detainee's First Amendment rights, the restraint must be rationally connected to the state's interests—here, security and the rehabilitation and treatment of sexually violent persons. To demonstrate the rational relationship, the state must "show more than a formalistic logical connection between a regulation and

[its institutional] objective." *Beard v. Banks*, 548 U.S. 521, 535 (2006). Rather, it must present "some evidence to show that the restriction is justified." *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 639 (7th Cir. 2005).

Applying this standard, we conclude that the defendants' evidence at summary judgment is too feeble to justify the ban on movies and video games. Defendants argue that "common sense" justifies prohibiting sex offenders from viewing sexually explicit materials. *See Waterman v. Farmer*, 183 F.3d 208, 214–15 (3d Cir. 1999) (although expert testimony and research showed an adequate connection between keeping pornography from incarcerated sex offenders and rehabilitating them, "common sense" also supports the ban). But, as we've recently said in other contexts, some data is needed to connect the goal of reducing the recidivism of sex offenders with a ban on their possessing legal adult pornography. *See United States v. Taylor*, No. 14-3790, 2015 WL 4653148, *4 (7th Cir. Aug. 6, 2015) (overturning a condition of supervised release that prohibited a person convicted of trafficking child pornography from possessing legal adult pornography; no evidence suggested that the legal material contributed to the illegal activity); *United States v. Siegel*, 753 F.3d 705, 709 (7th Cir. 2014) (observing that allowing a rapist of adult women access to legal pornography can decrease likelihood of recidivism because research shows that viewing legal pornography can be a safe outlet for sexual behavior).

The record at this point does not contain a basis for linking the ban on media content to Rushville's therapeutic or security goals. The defendants, through Dr. Jumper and Scott, have offered a conclusion that eliminating "counter-

therapeutic" images of graphic content furthers a resident's treatment and security. But a bare assertion that Rushville's ban on sexual material promotes treatment is insufficient to justify summary judgment on a First Amendment claim. *See Ramirez v. Pugh*, 379 F.3d 122, 128 (3d Cir. 2004) (reversing dismissal of First Amendment challenge to keeping sexually explicit magazines from all prisoners, reasoning that mere assertion of rehabilitative effect is inadequate); *Wolf v. Ashcroft*, 297 F.3d 305, 308 (3d Cir. 2002) (reversing decision upholding restriction on R-rated and NC-17-rated movies in federal prison where "brief, conclusory statement" drawing connection between policy and penological interest insufficient).

The defendants' assertions are insufficient to justify summary judgment no matter whether they are treated as lay or expert opinions. The defendants apparently offered the affidavits as lay opinion testimony, since they did not comply with the rules of civil procedure required to submit expert affidavits. *See* Fed. R. Civ. P. 26; *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, 732 (7th Cir. 2010). But the affidavits do not disclose what "perceptions" the lay opinions are based on, so they do not comply with Federal Rule of Evidence 701 (lay opinions must be "rationally based on witness's perception"). The opinions would be entitled to no more weight if we considered them from an expert because "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Wendler & Ezra, P.C. v. Am. Int'l Group, Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (internal quotation marks omitted); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Rowe v. Gibson*, No. 14-3316, 2015 WL 4934970, *5 (7th Cir. Aug. 19, 2015); *Finn v. Warren Cnty.*, 768 F.3d 441, 452 (6th Cir. 2014); *Guile v. United States*,

422 F.3d 221, 227 (5th Cir. 2005). And although a party who is qualified may serve as an expert witness, *see Braun v. Lorillard Inc.*, 84 F.3d 230, 238 (7th Cir. 1996), *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988), we've recently observed that an opinion lacking a legitimate basis, received from a defendant who is proffered as an expert, is insufficient to justify summary judgment. *See Rowe*, 2015 WL 4934970 at *9. Thus summary judgment here was premature; further proceedings are needed to see what the defendants based their opinions on.

The ban on video game consoles capable of accessing the internet is another matter—the record evidence shows that in two ways the policy bears a rational relationship to the facility's interest in security. First, consoles capable of accessing the internet allow detainees to contact victims of their crimes; the ban on these consoles thus advances the state's interest in protecting the public. Second, because these consoles permit inmates to download, manipulate, share, and store *illegal* pornography, the ban also promotes the state's legitimate interest in preventing crime. Because this evidence went unrebutted, summary judgment on the console-ban claim was proper.

Summary judgment for the defendants also was proper with respect to Brown's retaliation claims. First, Brown cannot show that Rushville's decision to replace its universal ban on movies and games, and censor only listed movies and games, was "likely to deter First Amendment activity in the future." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). The modified policy, which Rushville enacted after Brown sued, is *less* restrictive than the one it replaced. Second, as to the policy prohibiting game consoles, it is irrelevant if Rush-

ville may have had a retaliatory motive for enacting it if, as we've concluded, the policy also is supported by a legitimate reason. *See Hammer v. Ashcroft*, 570 F.3d 798, 803 (7th Cir. 2009) (en banc) ("The Supreme Court did not search for 'pretext' in *Turner*; it asked instead whether a rule is rationally related to a legitimate goal); *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2004) (prisoner's retaliation claim fails where action taken serves legitimate correctional goal).

Accordingly, we VACATE the judgment with respect to Brown's challenge to the policy restricting his access to movies and video games, and REMAND for further proceedings. Brown has abandoned his request for monetary damages, so the only defendant remaining on remand is Gregg Scott, the current program director responsible for implementing policies at Rushville. In all other respects we AFFIRM the district court's judgment.