| NONPRECEDENTIAL DISPOSITION |
| --- |
| To be cited only in accordance with Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 3, 2019[*]
Decided April 5, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1194

| | |
| --- | --- |
| CHRISTOPHER BAILEY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 15-cv-0072-MJR-SCW |
| | |
| JESSICA STOVER, et al., | Michael J. Reagan, |
| *Defendants-Appellees*. | *Chief Judge*. |

### O R D E R

Christopher Bailey, who is detained at Big Muddy River Correctional Center under the Illinois Sexually Dangerous Persons Act, 725 ILCS 205/0.01 *et seq.*, claimed that prison clinical staff and administrators violated his constitutional rights under the First, Fourth, and Fourteenth Amendments by confiscating (1) his 100-page list of books, music, movies, and other media that he hoped to consume after release and

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

(2) issues of *Maxim* magazine. Because there is a reasonable relation between the prison's restriction and its legitimate penological interest in rehabilitating sex offenders, we affirm the district court's entry of summary judgment for the defendants.

Big Muddy prohibits people in the Sex Offender Program from using or possessing material that the program staff consider sexually stimulating or used for a sexual purpose. After prison officials seized Bailey's magazines and the list, which contained names of bands and titles of songs and movies that were graphically sexual, Bailey filed numerous grievances. All were denied but one (resulting in an issue of *Maxim* being returned to him with some pages about a prison escape removed). Bailey filed this suit alleging that the prison violated his freedom of expression under the First Amendment.

Bailey also initially brought claims under the Fourth and Fourteenth Amendments, alleging unreasonable searches of his cell and unlawful seizure of his property. The district court dismissed both claims at screening because a prisoner has no reasonable expectation of privacy in his cell, *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), and because Bailey could not establish the deprivation of his property without due process if the State provided an adequate post-deprivation remedy (which Illinois did, 705 ILCS 505/8); *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999). On appeal Bailey contests the dismissal of his due-process claim. But he fails to elaborate or to engage with the district court's sound reasoning and therefore has waived the argument. *See* Fed. R. App. P. 28(a)(8)(A); *Tobey v. Chibucos*, 890 F.3d 634, 652 (7th Cir. 2018).

The defendants moved for summary judgment on the ground that Big Muddy has a legitimate penological interest (primarily, rehabilitation) in prohibiting sex offenders from possessing sexually explicit materials and that this rule was legitimately applied to Bailey. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (rehabilitation among "valid penological objectives"). They presented the affidavit of the Program's coordinator, Dr. Holt, who stated that allowing Bailey his magazines and list of media titles containing sexually explicit words would be detrimental to his treatment and recovery. Dr. Holt pointed to studies showing that such material presents negative outcomes for sex offenders, such as an increased risk of sexual criminal behavior and intimacy disorders, increased arousal to violence, increased acceptance of rape myths, and an increased risk of engaging in rape or coercive sex acts.

Bailey countered with one article describing a debate over the link between the consumption of sexually explicit material and sexual abuse because of a sparsity of evidence that prohibiting sexually explicit materials in prison affects inmate behavior. The article posits that such material might provide a safe outlet for inmates and that further research into the causal link is warranted. Corey D. Burton & Richard Tewksbury, *Policies on Sexually Explicit Materials in State Prisons*, 24 Crim. Just. Pol'y Rev. 222, 223, 230, 232 (2011).

The district court granted summary judgment for the defendants on Bailey's First Amendment claim. It reasoned that under the test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), the policy of prohibiting sex offenders from possessing material with sexual content was reasonably related to the legitimate penological interest in rehabilitating these persons. The court noted that Bailey lacked evidence to rebut the validity of the defendants' reasons for restricting his access to the reading materials.

We review a grant of summary judgment de novo, construing the evidence in the light most favorable to Bailey. *Riker v. Lemmon*, 798 F.3d 546, 551 (7th Cir. 2015). Although the First Amendment protects prisoners' "freedom to read," *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir. 2005), the freedom is not unlimited—for example, a prison could forbid someone imprisoned for computer hacking from having a book "that would allow him to increase his ability as a hacker when he's released," *id.* at 639. A reading restriction is valid if it is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

Strictly speaking, Bailey is not a prisoner; he is a civilly committed detainee. But we assume that the *Turner* factors apply to Bailey, as they do to other civil detainees. *See Brown v. Phillips*, 801 F.3d 849, 853 (7th Cir. 2015). In *Allison v. Snyder*, we said that civil detainees are, technically speaking, pretrial detainees, because "criminal charges against them are pending." 332 F.3d 1076, 1078 (7th Cir. 2003). And because we have recently directed a district court to apply, on remand, the *Turner* standard to a pretrial detainee, *Miller v. Downey*, 915 F.3d 460, 461, 463–64 (7th Cir. 2019), we see no controversy with applying them to Bailey.

Under *Turner*, we determine whether the challenged restriction is reasonably related by balancing four factors: (1) whether the connection between a legitimate and neutral government objective and the restriction is valid and rational; (2) whether "alternative means of exercising" the restricted right remain open to the prisoner; (3) whether accommodation of the restricted right will "have a significant ripple effect" on other prisoners or prison staff; and (4) whether alternatives to the restriction suggest

that the restriction is an exaggerated, rather than reasonable, response to the prison's concerns. 482 U.S. at 89–91 (internal citations and quotations omitted); *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).

Bailey chiefly argues that there is no valid, rational connection between Big Muddy's legitimate interest in rehabilitating sex offenders and the restriction of his right to read sexually stimulating material. He asserts that the connection is "remote" and "arbitrary and irrational." Bailey notes that sex offenders have personal televisions on which they can watch shows containing full-frontal nudity (e.g., *Game of Thrones*), which he notes is sexually stimulating material. But this fact (if it is, indeed, a fact, for Bailey's statement is unsubstantiated) is irrelevant to whether Big Muddy's policy of confiscating sexually stimulating material is rational as applied to Bailey, who was committed so that he could be rehabilitated. The question is whether restricting Bailey's access to *Maxim* and a list of sexually explicit titles he hoped to view or read upon release is rational. *See Turner*, 482 U.S. at 89; *see also King*, 415 F.3d at 639.

Dr. Holt's opinion that the restriction benefits and is critical for Bailey's rehabilitation, plus the studies showing that sexually stimulating material is detrimental to sex offenders' treatment—support finding the policy rational. We defer to the expertise of prison clinical staff on disputed matters of professional judgment, such as whether material is sexually stimulating and thus detrimental to a sex offender's treatment. *See Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010); *Youngberg v. Romeo*, 457 U.S. 307, 322–23 (1982). Bailey's critiques, and the article he cites, do not successfully displace the presumption that the clinical staff's professional judgment is proper. Thus, the first *Turner* factor weighs in favor of finding Big Muddy's policy reasonable.

The third factor—the "ripple effect"—also weighs in favor of Big Muddy's position. Bailey contends that the policy is irrational because material forbidden to some prisoners might be allowed for someone else and then circulated among the prisoners. But Bailey's argument cuts against him; essentially, he concedes that allowing him the material could produce a ripple effect within the prison. *See Turner*, 482 U.S. at 90. And whether such a concern is rational is all the defendants needed to show under this factor. *See Thornburgh v. Abbott*, 490 U.S. 401, 418 (1989); *Singer*, 593 F.3d at 536. The potential for loopholes—for example, one sex offender might be permitted a magazine about cars, which might be the focus of another's paraphilia—does not make the concern animating the policy any less rational.

Finally, the second and fourth *Turner* factors weigh in favor of finding Big Muddy's policy reasonable. Bailey does not dispute that he retained alternative means of exercising his freedom to read. He could, for example, make lists and have reading materials without sexually stimulating elements. The existence of these other avenues of expression is evidence of the policy's reasonableness. *Thornburgh*, 490 U.S. at 418; *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003). Nor did Bailey identify alternatives that would fully accommodate his access to the confiscated reading materials at a de minimis cost to Big Muddy's legitimate interest in rehabilitation.[1] The only alternative he proposes is to send the confiscated materials home, but it is unclear how this alternative would "fully accommodate" Bailey's access while he is detained at Big Muddy.

Taken together, therefore, the *Turner* factors weigh in favor of finding the ban on sexually stimulating material reasonable as applied to Bailey. Bailey also contends that the policy is facially unconstitutional because it is both overbroad and vague. But applying overbreadth analysis makes little sense in the prison context where the right of free speech is curtailed, *Koutnik v. Brown*, 456 F.3d 777, 782–83 (7th Cir. 2006); *see also Borzych v. Frank*, 439 F.3d 388, 391–92 (7th Cir. 2006) (overbreadth analysis "has little or [no scope] in civil litigation dealing with prisons' internal operations"). And Bailey did not explain how an "ordinary" person would not understand what conduct is prohibited by the policy, *see Koutnik*, 456 F.3d at 783–84.

We have considered Bailey's other contentions—although not those he simply incorporates by reference from his district-court filings, *see Albrechtsen v. Bd. of Regents*, 309 F.3d 433, 436 (7th Cir. 2002)—and none has merit. The judgment of the district court is AFFIRMED.

---

[1] Bailey might have argued that the prison could have redacted pages containing sexually stimulating material while still "fully accommodating" his access to his *Maxim* magazines. Indeed, Bailey attests that he does not find the images of women in revealing clothing in *Maxim* to be sexually stimulating because they "aren't generally [his] type" and that he subscribes to the magazine only because he finds its articles "entertaining." But Bailey did not offer this alternative in the district court, so the potential argument would be waived. *Walker v. Groot*, 867 F.3d 799, 802–03 (7th Cir. 2017).