NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 19, 2021[*]
Decided July 12, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-2546

| | |
|---|---|
| ROBERT J. WRIGHT, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 19-cv-37-jdp |
| SHAUN FUNK, et al., *Defendants-Appellees.* | James D. Peterson, *Chief Judge.* |

## O R D E R

Robert Wright, an inmate at the Wisconsin Secure Program Facility, sued three correctional officers for allegedly violating the First and Eighth Amendments: two for displaying deliberate indifference to his suicide attempt and a third for issuing a conduct report in retaliation for Wright's statement that he would file a grievance about the incident. The district court entered summary judgment for the defendants on the

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Eighth Amendment claim, determining that no reasonable jury could find that either officer was deliberately indifferent to a known risk that Wright would attempt suicide. It further concluded that the retaliation claim could not proceed because the officer had a legitimate reason for issuing a conduct report. We affirm.

Because we are reviewing the entry of summary judgment, we construe the facts in the light most favorable to Wright. *See Lewis v. McLean*, 864 F.3d 556, 564 (7th Cir. 2017). In December 2018, a depressed Wright was in his cell and experiencing suicidal thoughts when he heard correctional officer Shaun Funk in the hallway. Wright called out to Funk, stating, "I'm having suicidal thoughts of taking myself out." Funk responded that he needed to finish passing out medication. Thirty minutes later, Wright rang the intercom in his cell and informed Sergeant Joshua Kolbo that he was having suicidal thoughts and wanted to speak with the prison's psychological services unit. Kolbo told Wright that he would need to wait until the next day.

Four hours later, Wright again used his cell's intercom to contact Kolbo and announced that he had taken about 50 pills of acetaminophen and ibuprofen. Kolbo and a nurse arrived at Wright's cell, and the nurse insisted that Wright go to the hospital. According to Wright, after he took the pills, he experienced stomach pain, a migraine, drowsiness, and weakness. He further says that while at the hospital he vomited, had diarrhea, and lost consciousness, though the hospital records note none of that and state that "patient has no complaints." Wright's test results show that he had an elevated level of acetaminophen in his blood and say nothing about ibuprofen. The pharmacy director of the Wisconsin Department of Corrections supplied a declaration attesting that Wright had a minimally elevated level of acetaminophen in his blood that did not place him at any risk. The hospital gave Wright a charcoal drink and then released him to prison officials, who placed him in clinical observation.

While Wright was under observation, correctional officer Ryan Neis tried to interview him about the incident. Wright told Neis that he did not want to discuss what had happened, and that he would be filing a grievance and a lawsuit against Funk and Kolbo. According to Wright, Neis responded: "Well if that's the approach you're gonna take then I'm going to write you a conduct report." The prison's health services unit also informed Neis that Wright's test levels were minimally elevated but not toxic, which was inconsistent with Wright's statement that he took about 50 pills. Neis then issued Wright a conduct report for lying, misuse of medication, and disruptive conduct.

Wright sued the three correctional officers under 42 U.S.C. § 1983, and ultimately the district court granted the defendants' motion for summary judgment on both the deliberate indifference and retaliation claims. It determined that Wright did not present

sufficient evidence that Kolbo and Funk knew of a strong likelihood that Wright would seriously harm himself. Specifically, the court concluded that a recent decision of this court (*Johnson v. Garant*, 786 F. App'x 609 (7th Cir. 2019)) suggests recovery is unavailable if a correctional officer has no notice of a likely or imminent danger beyond an inmate's general statement that he was experiencing suicidal thoughts. As for the retaliation claim, the court determined that Neis had a legitimate penological reason for disciplining Wright, because the level of acetaminophen in Wright's system showed that he lied about how many pills he had taken.

On appeal, Wright first argues that the district court erred by entering summary judgment for the defendants because he told Kolbo and Funk that he was thinking about suicide and they did nothing to stop him. If the officers had appropriately responded to his statements by placing him in an observation cell, Wright contends, he would not have taken the pills.

For this claim to survive summary judgment, Wright needed evidence that Kolbo and Funk knowingly and unreasonably failed to respond to an objectively serious risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994); *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018). A defendant acts knowingly and unreasonably to the objectively serious risk of suicide if he "(1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Lisle v. Welborn*, 933 F.3d 705, 716–17 (7th Cir. 2019) (quoting *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006)). This means the defendant "must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Collins*, 462 F.3d at 761.

Here, no reasonable jury could find that Kolbo and Funk knew of a substantial risk of suicide based on Wright's statements that he was having suicidal thoughts and would like to speak with someone from the psychological services unit. These circumstances alone did not put the officials on notice that Wright would imminently attempt to harm himself. *Id.* And, although Wright did submit his psychological records that document his struggle with mental illness (including a self-reported suicide attempt nearly 20 years earlier), he does not provide any evidence that Kolbo or Funk knew about these records. *Cf. Sanville v. McCaughtry*, 266 F.3d 724, 737–38 (7th Cir. 2001) (determining officials were on notice that inmate's statements threatening suicide were not idle when inmate also wrote a last will and testament, refused to eat, and when officials knew of his history of mental illness and multiple suicide attempts, and knew his mother called the prison to alert officials that her son was suicidal). Moreover, once the officials learned that Wright had taken the pills and may be in danger, they responded quickly and appropriately by arriving at Wright's cell with a nurse and—

based on Wright's statement about the number of pills he took—transporting him to the hospital. Then, after the hospital discharged Wright and he returned to the prison later that evening, officers placed him under clinical observation.

Next, Wright argues that the court erred by entering summary judgment on the retaliation claim because Neis issued a conduct report only after Wright stated that he would be filing a complaint against Funk and Kolbo. To make a prima facie case for retaliation, a plaintiff must show that he engaged in a protected activity, suffered a deprivation that would likely deter a reasonable person from engaging in that activity in the future, and his protected activity was a motivating factor for the retaliation. *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018). But even if a plaintiff can make a prima facie showing, summary judgment is still appropriate if the defendant acted for a legitimate penological reason. *Brown v. Phillips*, 801 F.3d 849, 855 (7th Cir. 2015).

That is the record here. Even assuming Wright made out a prima facie case of retaliation (which we do not decide), Neis had a legitimate reason for writing a conduct report. The health services unit told Neis that Wright's test results contradicted his assertion that he took 50 pills. Prison officials have a legitimate penological interest in punishing inmates who lie about ingesting a dangerous amount of pills and also in deterring other inmates from engaging in similar behavior. *See, e.g.*, *Overton v. Bazzetta*, 539 U.S. 126, 133–34 (2003) (legitimate penological interest in promoting internal security and deterring substance use); *Van den Bosch v. Raemisch*, 658 F.3d 778, 785–86 (7th Cir. 2011) (legitimate penological interest in protecting safety of inmates); *Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007) (legitimate penological interest in conserving staff resources).

AFFIRMED