NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 6, 2021[*]
Decided October 6, 2021

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-1384

| | |
|---|---|
| PHILLIP GADZINSKI, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Western District |
| | of Wisconsin. |
| *v.* | No. 19-cv-339-jdp |
| DOUG BELLILE, et al., | James D. Peterson, |
| *Defendants-Appellees.* | *Chief Judge.* |

## O R D E R

Sand Ridge Secure Treatment Center, where Phillip Gadzinski has been civilly committed since 2009 as a "sexually violent person" under Wis. Stat. § 980.06, bars patients from acquiring their own video games and gaming systems. Gadzinski sued Sand Ridge's administrators, alleging that this restriction violates his First Amendment

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

rights. Relying on evidence that patient-owned video games have led to antisocial and addictive behaviors in patients and that Gadzinski can safely use pre-approved, facility-owned video games instead, the district court entered summary judgment for the defendants. Because Sand Ridge has met the First Amendment standard of showing a reasonable relationship between its video-game restriction and its legitimate interest in the safety and rehabilitation of its patients, we affirm.

In reviewing a grant of summary judgment adverse to Gadzinski, we present the evidence and inferences in the light most favorable to him. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018). When Sand Ridge created its policy in 2005 restricting patient-owned video games, and updated the policy in 2017, it documented that when patients acquired their own games, their treatment, rehabilitation, and safety suffered. As confirmed by sworn declarations, patients who used their own games would forgo treatment to play them, fight over them, trade them for sexual favors, fall asleep during therapy after all-night gaming sessions, and replace the games' content with pornography. Several academic studies confirmed these problems. One of them aggregated data from more than 130,000 participants and concluded that violent or sexually explicit video games can intensify aggression and decrease empathy. Further, Sand Ridge says that if the facility rescinded its restriction of patient-owned video-game devices, more staff would be needed to review each game to prevent patients from sneaking prohibited content into the games. In light of its restriction, Sand Ridge offers patients approved, facility-owned video games, which they can safely use in the recreational department.

Gadzinski violated the video-game restriction in 2019. He unsuccessfully proposed to Sand Ridge's director that the facility allow patients to own video-game systems with preloaded games. After learning that the director denied his proposal, Gadzinski nonetheless ordered his own video-game system—preloaded with violent video games. The staff disciplined Gadzinski for knowingly defying the restriction. For about a month, he lost the privilege to stay out late, visit other patients' rooms, and order food from outside restaurants or packages without prior permission.

Gadzinski then sued Sand Ridge administrators for, in his view, violating his rights under the First Amendment by restricting his access to video games. *See* 42 U.S.C. § 1983. The defendants moved for summary judgment. They argued that Sand Ridge's policy reasonably promotes treating and rehabilitating patients and keeping the facility secure. The district court entered summary judgment for the defendants. It reasoned that under the test set forth in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987), Sand Ridge's

policy of restricting personal video-game ownership was reasonably related to its legitimate interest in the security and rehabilitation of its patients. It also noted that Sand Ridge provided alternative means for patients like Gadzinski to use video games.

On appeal, Gadzinski contends that the evidence that personal video-game use is countertherapeutic was "too feeble" to justify summary judgment. He observes that the researcher, whose aggregated study concluded that video games can amplify aggression and sap empathy, published earlier studies that some scientific and legal communities have questioned.

The First Amendment covers video games, *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 790–91 (2011), but civil detention centers like Sand Ridge may restrict access to them if the restriction is reasonable. *See Brown v. Phillips*, 801 F.3d 849, 853–54 (7th Cir. 2015) (applying *Turner* to civil detainees). To determine if Sand Ridge's restriction is reasonable, we consider four factors: (1) evidence of the restriction's rational relationship to the facility's legitimate interests; (2) the availability of alternative forms of expression; (3) the burden on the facility of rescinding the restriction; and (4) any obvious, uncostly alternatives to the restriction that satisfy the facility's interest. *See Turner*, 482 U.S. at 89–91.

On the first factor, we agree with the district court that Sand Ridge demonstrated that restricting access to video games rationally advances its legitimate interest in patients' rehabilitation, treatment, and security. The academic research on which Sand Ridge relied used reasonably defensible methods—aggregated data from more than 130,000 participants—to conclude that video games can increase aggression in players. Even if, as Gadzinski maintains, previous studies on this subject by the same researcher are debatable, a trial on this first factor is unnecessary for two reasons. First, we require only that Sand Ridge present "some evidence" of the relationship, *see Brown*, 801 F.3d at 854 (internal citation omitted), and this aggregated research satisfies this burden. Second, Sand Ridge supplied other, unrebutted evidence that restricting video-game access is needed to promote the rehabilitation and safety of its patients. The facility's administrators attested that some of Sand Ridge's detainees have exchanged access to video games for sexual favors, fought over games, and missed treatment sessions because of game-playing. Gadzinski does not attack these reasons as insufficient to demonstrate the rational relationship between the restriction and the facility's interest in the rehabilitation of its patients.

The other *Turner* factors reinforce the conclusion that Sand Ridge's video-game policy is reasonable. Gadzinski does not dispute, for instance, that Sand Ridge provides patients with alternative access to approved, facility-owned video games, or that he personally can use these alternative games. *See Turner*, 482 U.S. at 90; *Thornburgh v. Abbott*, 490 U.S. 401, 417–18 (1989) (noting in prison context that alternative avenue of expression is evidence of policy's reasonableness). And Sand Ridge presented undisputed evidence that abandoning the video-game restriction would create costly security and staffing problems: In addition to patients trading video games for sexual favors, fighting over them, and wasting therapy sessions because of prolonged playing, the facility would have to reallocate or hire more staff to search each game to prevent patients from, among other things, replacing gaming content with pornography. *See Turner*, 482 U.S. at 90–91. Gadzinski replies that these concerns are "an over-exaggeration," but his unsubstantiated supposition does not rebut the evidence. *Austin*, 885 F.3d at 1089. Because all of the *Turner* factors show that the Sand Ridge video-game policy does not violate Gadzinski's rights under the First Amendment, the entry of summary judgment was proper.

AFFIRMED